UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/11/2025

KAARYN NAILOR SIMMONS,

                              Plaintiff,

                            -v-

TRUSTEES OF COLUMBIA UNIVERISTY IN
THE CITY OF NEW YORK,

                            Defendant.

-------------------------------------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:
:

1:25-cv-7925-GHW

<u>MEMORANDUM OPINION &</u>
<u>ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

In 2012, Defendant Trustees of Columbia University in the City of New York ("Columbia")
hired Plaintiff Kaaryn Simmons to serve as the "Service Center Director" of its Small Business
Development Center ("SBDC").  The SBDC, hosted within the Columbia Business School,
provided counseling, resources, and training to small businesses within its community.  Plaintiff
alleges that, because Columbia received federal funding from the Small Business Association
("SBA") to operate the SBDC, it was required to comply with certain regulations promulgated by
the SBA governing the federal program that funded the SBDC, including 13 C.F.R. § 130 ("Part
130"), which sets a floor for the compensation of the director of any SBDC.

Specifically, Part 130 mandates that "where the recipient organization is an educational
institution" the salary of a service center director must approximate the salary of an assistant
professor employed in the school or department in which the center is located.  The parties dispute
whether, as matter of statutory interpretation, Columbia is a "recipient organization" within the
meaning of Part 130 and, accordingly, whether Columbia is bound by Part 130's minimum salary
requirements at all.  Ms. Simmons argues that because Columbia is a "recipient organization" within
the meaning of Part 130, Columbia should have compensated her at approximately the same rate as

faculty at Columbia's business school.  Ms. Simmons alleges that, for the entirety of her twelve years of employment as a service center director at Columbia's SBDC, she was underpaid because Columbia failed to compensate her at the wage level required by Part 130.  And Ms. Simmons alleges that, after she brought this violation to Columbia's attention, Columbia retaliated and terminated her employment.

Dissatisfied with Columbia's alleged underpayment, Ms. Simmons sued Columbia in New York State Supreme Court, asserting exclusively state law claims including breach of contract, promissory estoppel, unjust enrichment, quantum meruit, unlawful retaliation, and racial discrimination in violation of New York City and New York State law.  On September 24, 2025, Columbia removed this case from New York State Supreme Court to this District.  As the basis for this Court's subject matter jurisdiction, Columbia invokes 28 U.S.C. § 1331 ("§ 1331"), asserting that, even though Ms. Simmons's complaint only alleges state-law claims, the Court has federal question jurisdiction because resolving Ms. Simmons's claims necessarily entails determining a substantial and disputed issue of federal law—whether Columbia's wage practices violate regulations promulgated by the SBA.

Because both Columbia and Ms. Simmons are based in New York, the parties agree that there is no diversity jurisdiction here and the only possible basis for the Court's subject matter jurisdiction is federal question jurisdiction.  Accordingly, the threshold question before the Court is whether Ms. Simmons's state-law claims implicate a "substantial" federal issue sufficient to confer federal question jurisdiction.  But just because a state-law claim references federal law or requires some federal statutory or regulatory interpretation to resolve it does not mean that the claim necessarily raises substantial federal issues.  Because the federal issues implicated by Ms. Simmons's claims are not sufficiently substantial to confer federal question jurisdiction, the Court lacks subject matter jurisdiction over this case.  Accordingly, Plaintiff's motion to remand is GRANTED and this

case is remanded to New York Supreme Court.

## II.    BACKGROUND

Ms. Simmons filed this case in New York State Supreme Court, New York County on September 5, 2025.  Dkt. No. 1-5.  Ms. Simmons asserts that for about twelve years, Columbia unlawfully failed to compensate her at the wage level mandated by federal law as required by certain SBA regulations—namely, Part 130—governing the implementation of Columbia's SBDC, which was partially funded by SBA grants.  *Id.* ¶ 1.  Ms. Simmons alleges that, after she brought this underpayment to Columbia's attention, Columbia retaliated and terminated her employment.  *Id.* ¶¶ 96–127.  In her complaint, Ms. Simmons exclusively asserts New York state-law claims including breach of contract, promissory estoppel, unjust enrichment, quantum meruit, unlawful retaliation in violation of the New York State Labor Law § 740, and unlawful racial discrimination in violation of the New York City and New York State Human Rights Laws ("NYCHRL" and "NYSHRL" respectively).  *Id.* ¶ 2.  But Ms. Simmons's contention that she was underpaid relies on her argument that Part 130 mandated that Columbia pay her a higher salary than what she received.

On September 24, 2025, Columbia removed this case to federal court under 28 U.S.C. § 1441(a).  Dkt. No. 1 ("Notice of Removal") ¶ 20.  Columbia asserts that this Court has subject matter jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1331 because resolution of Ms. Simmons's claims depends on "whether . . . federal law mandates that Columbia pay Plaintiff a higher salary than it paid her, a question that will require this Court to interpret and apply federal law."  Notice of Removal ¶ 2.

On November 10, 2025, Ms. Simmons filed a motion to remand this case under 28 U.S.C. § 1447.  Dkt. No. 19 ("Mem.") arguing that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331.  Neither party disputes that Plaintiff does not plead any federal causes of action on the face of her well-pleaded complaint.  *Id.* at 12.  Nor do the parties dispute that the Court lacks

diversity jurisdiction under 28 U.S.C. § 1332—rightly so, as both parties are citizens of New York. Accordingly, the only possible basis for the Court to have subject matter jurisdiction over this case is by proper invocation of "federal question" jurisdiction.

Ms. Simmons argues that because Plaintiff does not plead any federal causes of action, federal question jurisdiction may only be found if her state-law claims implicate significant federal issues under the four-factor test articulated by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) and in *Gunn v. Minton*, 568 U.S. 251 (2013) ("*Grable-Gunn*"). *Id.* at 1. Ms. Simmons does not attempt to argue that her claims do not meet the first two elements of that test. *Id.* at 12. But Ms. Simmons does argue that Columbia has failed to establish that her state-law claims raise a "substantial federal issue,"[1] under "the rigorous standards" of the third *Grable-Gunn* requirement. *Id.* at 12–14.

On November 24, 2025, Columbia opposed Plaintiff's motion to remand. Dkt. No. 23 ("Opp'n"). Columbia argues that the federal question raised in this case is substantial because most of Plaintiff's claims are "expressly premised [on] and entirely contingent upon [Columbia's] alleged violation of federal law," *id.* at 1, because the federal question presented here is a "pure question of law," which will require that the Court interpret the phrases "recipient organization" and "educational institution" as used in 13 C.F.R. Part 130, *id.* at 14, and because resolution of the regulatory interpretation question "has significance for the SBA SBDC Program overall," *id.* at 15. And Columbia argues that "here, the 'recipient organization' . . . is not Columbia Business School or Columbia University (or even SUNY), but RF-SUNY," *id.* at 12, because, as "Plaintiff alleges [] the

---

[1] Ms. Simmons also argues that Defendant has not met its burden under the fourth *Grable-Gunn* requirement. Mem. at 12, 14 ("Defendant has failed to establish the third and fourth elements of the *Gunn* test."). Because the Court concludes that Defendant has not met its burden under the third *Grable-Gunn* requirement to demonstrate that Plaintiff's state-law claims raise sufficiently "substantial" federal issues, the Court need not analyze the fourth *Grable-Gunn* requirement. *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 38 (2d Cir. 2025) (quoting *Gunn*, 568 U.S. at 258).

SBA contracted with the Research Foundation for the State University of New York ('RF-SUNY') to sponsor the New York SBDC network," and because "RF-SUNY [then sub]contracted with Columbia in 2009 to establish the Columbia-Harlem Small Business Development Center," *id.* at 6.

Plaintiff filed her reply on December 1, 2025, Dkt. No. 25 ("Reply"), in which she distinguishes the cases cited by Columbia in its opposition and identifies two recent cases from this District, which she argues are analogous to this case, concluding that the court lacked federal question jurisdiction under the *Grable-Gunn* framework.

## III.    LEGAL STANDARD

### A.    Removal

Under 28 U.S.C. § 1441(a),[2] an "action that was originally filed in state court may be removed by a defendant to federal court only if the case originally could have been filed in federal court." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (citing 28 U.S.C. § 1441(a))). After removal to federal court, "[i]f . . . it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden" of establishing federal question jurisdiction. *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (citations omitted) ("On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper. . . . Unless that burden is met, the case must be remanded back to state court.").

The Court must "construe the removal statute narrowly, resolving any doubts against

---

[2] As relevant here, 28 U.S.C. § 1447(d) provides that, for cases removed pursuant to 28 U.S.C. § 1441(a)—"[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

removability." *State by Tong*, 83 F.4th at 132 (quoting *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019)).  And "[t]he Court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff."  *Brice v. Costco Wholesale Corp.*, No.23-cv-7857 (GHW), 2024 WL 2783895, at *3 (S.D.N.Y. May 28, 2024) (quoting *Lis v. Lancaster*, No. 19-CV-1414 (JSR), 2019 WL 2117644, at *4 (S.D.N.Y. Apr. 25, 2019) (quoting *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996))).

### B.    Federal Question Jurisdiction and the *Grable-Gunn* Test

Columbia invokes 28 U.S.C. § 1331 as the basis for removal and this Court's jurisdiction. Under 28 U.S.C. § 1331, "the district courts [] have original jurisdiction of all civil actions arising under" federal law.  28 U.S.C. § 1331.  To invoke federal question jurisdiction under § 1331, a plaintiff's claims must "arise[] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

A civil action arises under federal law if the well-pleaded complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)).  "That longstanding rule makes the complaint—the plaintiff's own claims and allegations—the key to 'arising under' jurisdiction."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 47 (2025) ("If the complaint presents no federal question, a federal court may not hear the suit.").

"Typically, a case arises under federal law within the meaning of § 1331 when a plaintiff

6

pleads a cause of action created by federal law."[3]  *AMTAX*, 136 F.4th at 38 (citing *Gunn*, 568 U.S. at 251); *see also Royal Canin*, 604 U.S. at 47 (same).  But the absence of a cause of action created by federal law "does not end the Court's [jurisdictional] inquiry."  *New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 272, 280 (S.D.N.Y. 2024).  When, like here, "a plaintiff pleads only state-law causes of action, federal jurisdiction may still exist in a 'special and small category' of cases, namely, those that 'implicate significant federal issues.'"  *AMTAX*, 136 F.4th at 38 (internal citations omitted) (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 677; then quoting *Grable*, 545 U.S. at 312).  This is an "extremely rare exception."  *Fracasse*, 747 F.3d at 144 (quoting *Gunn*, 568 U.S. at 251).  This "tightly circumscribed," *State by Tong*, 83 F.4th at 133, category of cases "is rooted in the 'commonsense notion that a federal court [should] be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law.'"  *AMTAX*, 136 F.4th at 38 (quoting *Grable*, 545 U.S. at 312).

"Still, the Supreme Court has been sparing in recognizing state law claims fitting this criterion, and it is well-settled that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *AMTAX*, 136 F.4th at 38 (internal citation omitted) (quoting *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010 (2d Cir. 2014); then quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)); *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) ("Simply raising a federal issue in a complaint will not automatically

---

[3] Where a complaint does not "affirmatively allege any cause of action created by federal law," and instead relies exclusively on state-law, a defendant "can establish federal-question jurisdiction only by demonstrating that [the] suit falls within an exception to the well-pleaded complaint rule."  *State by Tong*, 83 F.4th at 133 (2d Cir. 2023) (internal citations omitted) (quoting *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 312; then quoting *Caterpillar Inc.*, 482 U.S. at 392.)).  The Second Circuit has recognized "exactly three situations [] in which a complaint that does not allege a federal cause of action may nonetheless 'arise under' federal law for purposes of subject matter jurisdiction."  *Id.* (citation modified) (quoting *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014)) (noting that these exceptions are exhaustive).  Those exceptions are: "(1) if Congress expressly provides, by statute, for removal of state[-]law claims; (2) if the state[-]law claims are completely preempted by federal law; and (3) in certain cases if the vindication of a state[-]law right necessarily turns on a question of federal law."  *Id.* (alterations in *State by Tong*) (quoting *Fracasse*, 747 F.3d at 144).  At issue in this case is the third exception.

confer federal question jurisdiction.'")).  A district court determining whether federal question jurisdiction exists "must proceed prudently and make pragmatic distinctions between those allegations, if any, that raise substantial questions and those that do not."  *Id.*

In determining whether a state-law claim confers federal question jurisdiction, the Second Circuit applies the four-factor test first articulated by "the Supreme Court in *Grable* and later streamlined in *Gunn.*"  *State by Tong*, 83 F.4th at 133 (citing *Grable*, 545 U.S. at 312; then citing *Gunn*, 568 U.S. at 251).  Under the *Grable-Gunn* framework—

> Federal question jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Id.*  The *Grable-Gunn* framework is not a balancing test—federal question jurisdiction over state-law claims is "only proper 'where *all four* of the[] [*Grable-Gunn*] requirements are met.'"  *AMTAX*, 136 F.4th at 38 (quoting *Gunn*, 568 U.S. at 258) (emphasis in *AMTAX*).

## IV.    DISCUSSION

Columbia has not met its burden to demonstrate that the Court has subject matter jurisdiction in this case.  Neither party disputes that Plaintiff's complaint alleges only state-law claims.[4]  Because Plaintiff does not assert any federal causes of action on the face of her well-pleaded complaint, the only question before the Court is whether Plaintiff's claims fit within that "special and small category" of cases asserting state-law claims that nonetheless implicate "substantial" federal questions sufficient to confer subject matter jurisdiction.  And because Plaintiff does not dispute that the first two *Grable-Gunn* requirements are met in this case, Mem. at 12, the narrow issue is whether Defendant has met its burden to demonstrate that Plaintiff's state-law claims meet the third *Grable-Gunn* requirement—whether the federal issue raised by Plaintiff's state-

---

[4]And because the parties agree that the Court lacks diversity jurisdiction under 28 U.S.C. § 1332, as described above, the Court need not address that possible basis for subject matter jurisdiction here.

law claims is "substantial."

Because the federal issues implicated by Plaintiff's state-law claims are not "substantial" under the third *Grable-Gunn* requirement, Defendant has not met its burden to demonstrate that the Court has federal question jurisdiction. Accordingly, the Court lacks subject matter jurisdiction over this case and Plaintiff's motion to remand is granted.

"Substantiality requires that the embedded federal issue be important 'to the federal system as a whole,' not just [to] the private litigants involved." *AMTAX*, 136 F.4th at 39 (quoting *Gunn*, 568 U.S. at 260–64). An embedded federal issue "has such importance (1) when resolving the state-law claim would yield an interpretation of federal law that would be 'controlling in numerous other cases,' or (2) when [the case] challenges the 'action of any federal department, agency, or service.'" *Id.* (citation modified) (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700; then citing *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1024; then quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700; then citing *Grable*, 545 U.S. at 314–15). "By contrast, an issue that is 'fact-bound and situation-specific' is not sufficiently substantial to permit federal question jurisdiction." *Id.* (internal citation omitted). "Upon 'careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial.'" *Id.* (quoting *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1029).

First, Plaintiff's state-law claims do not raise a substantial issue of federal law because this "dispute does not implicate any action of the federal government." *Id.* at 40. This is a dispute between two private parties and any federal government involvement is, at most, incidental.[5] Ms. Simmons's state-law claims do not challenge any action of the federal government or SBA itself.

---

[5] Columbia's argument that this case does implicate federal government action because "the SBA plainly has a substantial interest in the proper interpretation and enforcement of its own regulations" is not persuasive. Opp'n at 16. It is well-settled that "the mere assertion of a federal interest [is] [in]sufficient to warrant the exercise of federal jurisdiction." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 622 (S.D.N.Y. 2013) (citing *Empire Healthchoice Assur., Inc.*, 547 U.S. at 701).

Plaintiff does not assert, for example, that SBA exceeded its authority in promulgating Part 130, nor do her claims "implicate the validity of the regulations themselves." *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Ag.*, 557 Fed. Appx. 87, 90 (2d Cir. 2014) (summary order) (concluding that the district court "properly dismissed a [state-law] claim" as insufficiently substantial because the claim did not challenge the validity of the regulations themselves, but merely the application of those regulations to the plaintiff's case).

Ms. Simmons does not challenge any action by the SBA at all. Rather, Plaintiff challenges *Columbia's* alleged failure to provide adequate compensation and *Columbia's* retaliatory conduct—the gravamen of her claims is that *Columbia* unlawfully failed to compensate her at the requisite wage level and that *Columbia* then terminated her employment in retaliation when Ms. Simmons complained of that violation. And the SBA is neither "a party to" nor "otherwise involved in this action." *AMTAX*, 136 F.4th at 39 (concluding that the plaintiff's state-law claims were likely not significant to the federal system in part because the IRS was "not a party to or otherwise involved in [the] action").

Second, Ms. Simmons's state-law claims do not raise a sufficiently substantial federal question simply because they are premised on alleged violations of federal law. "In this Circuit, courts have uniformly characterized claims arising from state law that 'predicate liability on the application of federal law' as state-law claims that necessarily raise federal questions—but as state-law claims nonetheless." *New York By James v. DailyPay, Inc.*, No. 25-cv-3439, 2025 WL 2695712, at *4 (S.D.N.Y. Sept. 19, 2025) (quoting *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414–15 (S.D.N.Y. 2020)).

Third, Plaintiff's state-law claims do not raise a substantial federal issue merely because resolving her claims would require that a court interpret the text of Part 130. "As a general rule, a suit seeking recovery under state law is not transformed into a suit 'arising under' federal law merely

10

because, to resolve it, the court may need to interpret federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d. Cir. 2005); *see also Bonnafant v. Chico's FAS, Inc.*, 17 F. Supp. 3d 1196, 1199–1200 (M.D. Fla. 2014) ("The assertion in the Notice of Removal that the state law claim is removable simply because it 'requires the interpretation of federal law' is clearly incorrect." (internal citation omitted)). "The problem with [defendant's] argument . . . is that the same could be said of *any* federal statute in which *any* agency plays *any* role in the interpretation . . . of the statute." *New York by James*, 735 F. Supp. at 280 (emphasis in original). Under Defendant's reading of the substantiality inquiry, a court "would be required to find that a federal issue is substantial if it raises a statutory interpretation question." *Id.* ("That is because the need for the development of clear, uniform standards is true for any federal statute."). If the Court were to conclude that any state-law claim which incidentally requires some federal statutory interpretation necessarily raise a substantial federal issue, this "extremely rare exception" to the well-pleaded complaint rule would swallow the rule. *Fracasse*, 747 F.3d at 144 (quoting *Gunn*, 568 U.S. at 251). This cannot be true. State courts can, and do, resolve questions of federal statutory or regulatory interpretation that are necessary to resolving a plaintiff's state-law claims.

Fourth, Plaintiff's state-law claims do not raise a sufficiently substantial federal issue because there is no indication that resolving Plaintiff's claims "would yield an interpretation of federal law that would be 'controlling in numerous other cases.'" *AMTAX*, 136 F.4th at 39 (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700). Resolving Ms. Simmons's state-law claims would not be controlling in numerous other cases because, as both parties agree—no other such cases exist.[6] Mem. at 13 ("Plaintiff has conducted an on-line search and *has not* located any other case involving claims for compensation under the standards set forth in Part 130.").

---

[6] Columbia admits that its "research has not uncovered a single other state court lawsuit in which a tort or contract claim was premised on these SBA regulations." Opp'n at 20.

Nor is there an evident prospect of a wave of such cases in the future. Columbia argues that resolution of the regulatory interpretation question will control the outcome of other cases because in 2024, "there were 63 'recipient organizations' . . . that received financial assistance from the SBA . . . and there were more than 900 SBDC Service Centers, each one of [which] . . . employs an SBDC Service Center Director." Opp'n at 16. Columbia's argument is purely speculative, and regardless, "a case in which the issue[s] [are] fact-bound, rather than purely legal, is far less likely to be useful to future parties and thus less likely to raise a substantial enough federal issue to merit the exercise of federal jurisdiction." *New York by James*, 735 F. Supp. at 280 (concluding that the court lacked federal question jurisdiction where the case involved "the fact intensive issue that will provide little guidance in future cases."). Here, because Plaintiff's claims do not present a pure question of law, as discussed in more detail below, resolution of the threshold regulatory interpretation question will not be dispositive of any other cases alleging violations of Part 130's compensation floor, should any such cases ever actually materialize.

Finally, determining whether Columbia failed to compensate Ms. Simmons in accordance with Part 130 "involves the application of law to a particular set of facts—precisely the kind of 'fact-bound and situation-specific' issue that courts have found insufficiently substantial." *New York By James v. DailyPay, Inc.*, 2025 WL 2695712, at *7 (citation modified) (quoting *Gunn*, 568 U.S. at 263). Defendant's attempt to characterize this case as presenting "a nearly pure issue of law" is unavailing. Opp'n at 14. True, resolution of Plaintiff's claims will require that the Court interpret the phrases "recipient organization" and "educational institution" in Part 130, which is a question of law. However, the Court's resolution of that threshold interpretive question does not fully resolve Ms. Simmons's claims here.

Rather, resolution of Ms. Simmons's claims is an "inherently fact-intensive issue," *New York by James*, 735 F. Supp. at 280, that requires, at minimum, determining the scope of Columbia's initial

agreement and subcontract with RF-SUNY, which sponsored the New York SBDC network, to determine which of these two entities is in fact the "recipient organization" here.  Opp'n at 6. Columbia argues that it is not the "recipient organization" here because the initial agreement and subcontract between it and RF-SUNY show that "the SBA's [] agreement in New York was entered into with [RF-SUNY]" not Columbia, and "it was, therefore, RF-SUNY that sub-contracted with Columbia."  Opp'n at 6 n.1 ("As demonstrated by the cooperative agreement . . ."); *see* Dkt. No. 7 at 2 ("As reflected in the cooperative agreement with SBA that is cited in the [c]omplaint . . . the SBA entered into a cooperative agreement with . . . RF-SUNY [and] RF-SUNY was therefore the 'recipient organization'").  The scope of these agreements will determine Columbia's ultimate liability in this case because those agreements will determine whether Columbia or RF-SUNY is the "recipient organization" here irrespective of the outcome of the initial interpretive question with respect to the meaning of "recipient organization" within Part 130.  The Court does not doubt that the interpretation of Part 130 is important to Ms. Simmons and to Columbia, that said, "it is not enough that the federal issue be significant to the particular parties in the immediate suit."  *Gunn*, 568 U.S. at 260.

In sum, Defendant has failed to meet its burden to demonstrate *Grable-Gunn*'s third "substantiality" requirement.  "This case is thus far afield from other cases where the federal issue was important enough for the exercise of federal jurisdiction, such as issues of broad importance to the national economy or the functioning of the government."  *New York by James*, 735 F. Supp. at 280 (citing *Grable*, 545 U.S. at 315; then citing *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1027). Accordingly, the Court lacks federal question jurisdiction over this case.

## V.    CONCLUSION

For the reasons described above, Defendant has failed to establish that the Court has federal question jurisdiction over this case and Plaintiff's motion to remand is GRANTED.  The Clerk of

13

Court is directed to terminate all pending motions and to remand this case to New York State Supreme Court in New York County without delay.

SO ORDERED.

Dated: December 11, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge

14